# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAMAR GRIFFIN,** *Plaintiff* | : : : | **CIVIL ACTION** |
| v. | : : | |
| **LT. MOODY** *et al.,* *Defendants* | : : : | **No. 19-4671** |

## MEMORANDUM

PRATTER, J.                                                                                                                                           JULY 6, 2021

Lamar Griffin, a pretrial detainee, alleges officers at the George W. Hill Correctional Facility violated his constitutional rights when they allegedly used excessive force against him. The Court previously dismissed Mr. Griffin's claim for deliberate indifference to his medical needs. The individual defendant officers have moved for summary judgment on the remaining claim. For the reasons that follow, the Court grants the officers' motion.

### BACKGROUND AND PROCEDURAL HISTORY

After several rounds of amended pleadings, the Court denied the five defendant officers' motion to dismiss Mr. Griffin's allegations of excessive force.[1] Mr. Griffin alleged that the facility's Correctional Emergency Response Team (CERT), which includes the five named individual defendants, "viciously assaulted" him by pepper spraying him and kicking him in the head. Doc. No. 10 (Am. Compl.) at 5. He claimed that the assault on the cell block was an "unprovoked attack." *Id.* at 7. Mr. Griffin could not identify in his pleadings which officer kicked him because that defendant was supposedly masked at the time.

---

[1] The Court's prior three opinions in this case set forth the operative facts and procedural history. *See Griffin v. George W. Hill (Cert Team) Corr. Facility*, No. 19-CV-4671, 2019 WL 5696142 (E.D. Pa. Nov. 1, 2019); *Griffin v. George W. Hill (Cert Team) Corr. Facility*, No. 19-CV-4671, 2019 WL 6329495 (E.D. Pa. Nov. 25, 2019); *Griffin v. Moody*, No. CV 19-4671, 2020 WL 6263163 (E.D. Pa. Oct. 23, 2020).

1

The Court found that Mr. Griffin's amended complaint, though sparse, contained enough allegations to satisfy Rule 8. When the Court denied the motion to dismiss, it reminded Mr. Griffin that, as the case proceeded, he would have to identify which of the officers were responsible for the alleged excessive force to survive a motion for summary judgment and to hold any defendant liable. *Griffin v. Moody*, No. CV 19-4671, 2020 WL 6263163, at *4 n.2 (E.D. Pa. Oct. 23, 2020).

The parties have since concluded discovery. In support of their motion, Defendants submitted a Critical Incident Report that details a prison riot and the officers' efforts to quell it.[2] According to the report, on September 2, 2019, individuals housed in Unit 7 at the George W. Hill Correctional Facility refused to return to their cells. The air conditioning system for the unit had broken down, causing sweltering conditions in the building. That afternoon, maintenance workers were on the roof to fix the problem. Doc. No. 35, Ex. A (Critical Incident Report). Officers informed Unit 7 that repairs were underway and that inmates in the unit's dayroom were to "lock in." Those instructions were ignored. Instead, officers reported "hostility escalating" and, further, inmates were "making comments of threats of fighting" and had tied sheets over their faces. *Id.*

Observing the tensions rising, Sergeant Carter ordered that all officers were to evacuate the unit and requested that CERT be activated. *Id.* Lieutenant Moody entered the unit dayroom to again request that the inmates return to their cells. Again, this instruction was ignored as was Sergeant Carter's subsequent order for those inmates still in the dayroom to lay on the ground. CERT arrived at the unit, at which time, Sergeant Carter, as the CERT team leader, then "gave direction and instruction to the CERT team," including to target those who were non-compliant. *Id.* Sergeant Carter and Officer Weaver then deployed pepper spray in the dayroom, directed at those inmates who refused to comply with repeated orders to stand down. *Id.*

---

[2] It appears that the Critical Incident Report was prepared on September 3, 2019, the day after the incident, although the text containing the date is slightly cut off in the version submitted to the Court.

2

Thirteen inmates from Unit 7 were then handcuffed and escorted off the floor for medical assessments. The Critical Incident Report lists Mr. Griffin as one of those 13 men. *Id.* While those individuals were being assessed for injuries, support staff entered the unit to undertake decontamination efforts, during which they recovered a shank in the dayroom.

A contemporaneous injury report prepared the day of the incident states that Mr. Griffin was examined on site. He was not reported to have complained of any injury, nor did he appear to have been injured. Doc. No. 35, Ex. C (Griffin Injury Report). The report concludes that Mr. Griffin did not seek and was not treated for any injuries.

Medical reports from the week before the incident show that Mr. Griffin previously complained of chronic headaches, "poor vision and eye strain." Doc. No. 35, Ex. D (Griffin Aug. 29, 2019 Medical Records). He was provided ibuprofen and referred for an x-ray examination and possible neurological consultation. *Id.* The radiology report from three days after the incident showed an "unremarkable skull." Doc. No. 35, Ex. E (Griffin Sept. 5, 2019 X-Ray report). No fractures, lesions, soft tissue abnormalities, or other pathologies were identified. *Id.* Roughly a month after the incident, Mr. Griffin reported that he was not experiencing headaches. Doc. No. 35, Ex. F (Griffin Oct. 2, 2019 Medical Records).

There is no video footage of the unit during the incident. On this, the parties agree that the situation was too dangerous for a camera operator. Doc. No. 35, Ex. A; Doc. No. 37 at 1.

## LEGAL STANDARD

A court can properly grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, a court must view the evidence presented in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility to establish the basis for the motion for summary judgment and to identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-moving party bears the burden of proof on an issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met its initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

DISCUSSION

Defendants move for summary judgment on the remaining excessive force claim. In the alternative, they contend that the claim is procedurally defaulted because Mr. Griffin failed to exhaust his administrative remedies. Mr. Griffin did not file any response to Defendants' statement of undisputed material facts; nor did he supply any evidence—deposition testimony or otherwise—to rebut the narrative that he participated in a prison riot. Instead, he submitted a two-page response that reiterates the allegations in his amended complaint.

I.     **Excessive Force**

Mr. Griffin raises a Section 1983 claim for alleged violations of his Fourteenth Amendment rights. Excessive force claims brought by a pretrial detainee are analyzed under the Fourteenth Amendment, whereas those brought by a sentenced prisoner are evaluated under the Eighth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015). This is because "pretrial detainees are entitled to greater constitutional protection than that provided by the Eighth Amendment." *Hubbard v. Taylor*, 399 F.3d 150, 167 n.23 (3d Cir. 2005). However, the Third Circuit Court of Appeals has recognized an exception to this general rule when an excessive force claim arises in the "context of a prison disturbance." *Fuentes v. Wagner*, 206 F.3d 335, 347 (3d Cir. 2000). In that situation, the appellate court has held that the Eighth Amendment's cruel and unusual punishment standard applies to a pretrial detainee's excessive force claim. *Id.*

As a threshold matter, the Court finds that the *Fuentes* exception applies here. Even while crediting Mr. Griffin's response, he does not dispute that there was a prison disturbance. Rather, he contends that Defendants "fail miserably in 'actually proving' their innocence"—a burden that, of course, Defendants do not bear. Doc. No. 37 at 1. At summary judgment, the non-moving party cannot rest merely on the allegations in his pleading. Neither of the documents Mr. Griffin

5

submitted—his response to Defendants' interrogatories and his two-page response—create a genuine dispute that Mr. Griffin's claim arises from Defendants' response to a disturbance.

To state a claim of excessive force, a plaintiff must allege facts that show that the force was used "maliciously and sadistically to cause harm," rather than "in a good-faith effort to maintain or restore discipline." *Brooks v. Austin*, 720 F. Supp. 2d 715, 719 (E.D. Pa. 2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). It is not enough for a prisoner alleging excessive force to question the "reasonableness of a particular use of force or the existence of arguably superior alternatives." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). The requirement that the plaintiff show something more reflects the understanding that in the midst of quelling a prison disturbance, officers must make decisions "in haste, under pressure, and frequently without the luxury of a second chance." *Id.* at 320.

### A. Proper Defendants

At the motion to dismiss stage, the Court reminded Mr. Griffin that to hold any defendant liable, he would need to identify which of the officers was responsible for the alleged excessive force, if indeed that evidence existed. *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 367 (E.D. Pa. 2006) ("Even if the Court were to find that the unidentified officer used excessive force . . . there can be no § 1983 liability against an unidentified individual officer.").

Lieutenant Moody, Officer Rashid, and Sergeants Carter and Royals argue summary judgment is proper for them because there is no evidence that they used any force—excessive or otherwise—against Mr. Griffin. "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

As to Sergeants Carter and Royals, and Officer Rashid, Mr. Griffin admitted that his claims against them arise from their alleged failure to provide "injured inmates adequate medical attention." Doc. No. 35, Ex. B ¶ 3 (Griffin Response to Defendants' Interrogatories). The Court previously dismissed Mr. Griffin's deliberate indifference claim. *Griffin v. George W. Hill (Cert Team) Corr. Facility*, No. 19-CV-4671, 2019 WL 6329495, at *3 (E.D. Pa. Nov. 25, 2019). Because the record lacks any evidence that either of these three defendants used excessive force, summary judgment is granted in their favor.

Mr. Griffin does not claim that Lieutenant Moody personally used excessive force against him. At most, he appears to argue that Lieutenant Moody is liable under a theory of supervisory liability based on Lieutenant Moody's decision to deploy the CERT team to Mr. Griffin's unit. Doc. No. 35, Ex. B ¶ 1. A supervisor may be personally liable under § 1983 "if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [her] subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

As a threshold matter, there is grave doubt as to whether Lieutenant Moody had supervisory authority in this situation. The Critical Incident Report states that "Sergeant Carter, the CERT team leader, gave direction and instruction to the CERT team . . . ." Doc. No. 35, Ex. A. Even crediting Mr. Griffin's interrogatory responses, Lieutenant Moody is, at most, "personally responsible for not communicating with efficacy" with the CERT team. Doc. No. 35, Ex. B ¶ 1. This allegation falls short of establishing that Lieutenant Moody authorized an unconstitutional use of force as a matter of law. *Accord Santiago v. Warminster Twp.*, 629 F.3d 121, 133 (3d Cir. 2010) (holding it insufficient for a plaintiff to "pursue a supervisory liability claim anytime a

planned operation resulted in excessive force, merely by describing the force used and appending the phrase 'and the Chief told them to do it.'").

**B. Officer Serody's Alleged Use of Excessive Force**

Accordingly, the only remaining defendant to consider is Officer Serody and the only remaining question is whether there is a genuine dispute of material fact that Officer Serody personally used excessive force against Mr. Griffin. That is because Mr. Griffin identified Officer Serody in his discovery responses as the defendant who allegedly kicked him in the head. Doc. No. 35, Ex. B.[3] It is undisputed that Officer Serody was deployed to address the situation in Unit 7, Doc. No. 35, Ex. A, although he disputes that an assault even occurred, Doc. No. 34 at 12.

The Court's analysis is guided by the following factors: (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, (4) any effort made to temper the severity of response, (5) the extent of the plaintiff's injury, and (6) whether the plaintiff was actively resisting. *Robinson v. Danberg*, 673 F. App'x 205, 209 (3d Cir. 2016) (quoting *Kingsley*, 576 U.S. at 397). Summary judgment is not appropriate if the evidence, viewed in the light most favorable to the plaintiff, supports "a reliable inference of wantonness in the infliction of pain." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000). Applying these factors to those undisputed facts in the record, the Court finds that the evidence does not support a claim that Mr. Griffin was deprived of a constitutional right by Officer Serody.

Contemporaneous reports of the incident demonstrate that in the moments preceding the CERT team deployment, Mr. Griffin, among others in Unit 7, had refused to "lock in," and were

---

[3] The Court notes that, other than Mr. Griffin's discovery responses, no other evidence in the record identifies Officer Serody as allegedly using force on Mr. Griffin.

making "comments of threats or fighting and rebelling staff." Doc. No. 35, Ex. A. Mr. Griffin does not dispute that he was in the unit dayroom at the time. It was only after Unit 7 inmates repeatedly refused to comply and when communications had broken down that the CERT was activated. The record shows that CERT did not use force until orders that prisoners first return to their cells, and later that they get on the ground, went ignored. Moreover, a shank was recovered from the unit's dayroom during decontamination. Although there is no evidence in the record that the officers were aware of its presence when CERT was activated, its presence supports that officials reasonably perceived a threat of unrest among the Unit 7 population. *Id.* Mr. Griffin has not adduced facts that rebut—let alone respond to—evidence that Defendants put into the record regarding the prison disturbance.

As to whether Mr. Griffin actively resisted, the record shows that there were 26 inmates on Unit 7 who initially did not lock in. Force, including pepper spray, was directed at only half of those inmates, including Mr. Griffin, because the other half had complied with orders to get on the ground once the CERT team entered the unit. Doc. No. 35, Ex. A. The record demonstrates that force was used on those inmates who consistently refused to stand down. Force was not deployed at random. Nor is there evidence in the record that the force used was disproportionate to the need to restore discipline or that Officer Serody used or continued to use force on Mr. Griffin after he was subdued. *Hope v. Pelzer*, 536 U.S. 730, 738 (2002).

Even assuming that Officer Serody used force against Mr. Griffin—which is disputed—the extent of the injury Officer Serody allegedly inflicted on Mr. Griffin also undermines a claim of excessive force. To be clear, Officer Serody cannot simply point to the absence of a significant resulting injury alone as a way to foreclose an excessive force claim. *Brooks*, 204 F.3d at 108. Nor is there a bright line delineating the degree of injury that may give rise to a constitutional

9

violation. As the Third Circuit Court of Appeals has made clear, a resulting injury provides a proxy for the force used, but "the focus remains on the force used." *Id.* Here, contemporaneous medical records from the day of the incident show that Mr. Griffin did not sustain any injuries. He contends, however, that inmates' injuries "were not recorded" on injury reports, Doc. No. 37 at 2, but it is undisputed that he underwent an x-ray and cervical spine scan three days after the incident. The radiology read-out states that there were no fractures, lesions, or other abnormalities either to his skull or spine. Doc. No. 35, Ex. E.

Even crediting Mr. Griffin's allegations that the assault actually occurred, given the context of responding to a prison disturbance and the absence of any even non-permanent, non-grievous injury, Mr. Griffin's complained-of injuries do not support a claim of excessive force. Although the Court must—and has—construed Mr. Griffin's pleadings liberally, he is not relieved of the burdens of contesting a summary judgment motion merely because he is proceeding *pro se*. *Schock v. Baker*, 663 F. App'x 248, 252 (3d Cir. 2016). Unsubstantiated assertions cannot carry the day.

That said, the Court is also mindful of the appellate court's guidance which could be read as announcing a more lenient standard when considering a *pro se* prisoner's allegations of excessive force. *See, e.g., Brooks*, 204 F.3d at 109 ("[a]ccepting Brooks's allegations as true, as we must, a jury could find that the defendants acted not merely in good faith"); *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) ("If we accept Smith's version of the facts as true, as we must, there was simply no justification for the defendants' conduct . . . ."). In those cases, however, plaintiffs provided some sworn testimony, either a sworn statement or in a deposition. Mr. Griffin has provided neither. Instead, he asks the Court to accept his bare allegations without adducing any competent evidence that he suffered any injury or that rebuts the events of September 2, 2019.

In all, based on a review of the uncontradicted evidence in the record, the record does not support a finding that Officer Serody—or any other defendant—acted "maliciously and sadistically" to cause Mr. Griffin harm. Defendants responded to a disturbance of Mr. Griffin's and other Unit 7 inmates' creation. There is nothing in the record that would suggest an inference of wantonness in Defendants' conduct.

## II. Administrative Exhaustion

Defendants argue, in the alternative, that the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e *et seq.*, bars Mr. Griffin's excessive force claim because he failed to exhaust his administrative remedies prior to filing a federal complaint. The PLRA was enacted to curb a spike in prisoner litigation filed in federal courts. The keystone of this statute is the robust requirement that a prisoner exhaust "all 'available' [administrative] remedies." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (discussing 42 U.S.C. § 1997e(a)). If a prison provides a written grievance procedure to its inmates, they are required to follow those procedures. Failure to do so risks procedural default. *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004).

Within this Circuit, a failure-to-exhaust affirmative defense proceeds in two steps. Defendants must first show that the inmate failed to exhaust the "on-the-books remedies." *West v. Emig*, 787 F. App'x 812, 814 (3d Cir. 2019). Provided Defendants make that showing, the inmate then must produce evidence that those remedies were "unavailable" to him. *Id.*

Here, it is undisputed that Mr. Griffin received the George W. Hill Correctional Facility's Inmate Handbook nearly six months before the incident. Doc. No. 35, Ex. G (Signed Acknowledgement Form). The handbook provides that an inmate has five days to appeal to the Warden if he disagrees with the response provided as to a grievance. Doc. No. 35, Ex. H at 81. The record shows that Mr. Griffin knew how to file a grievance, did in fact file two grievances

about the incident at issue here, but did not exhaust the appeal process for either. Insofar as the handbook supplies "the yardstick" setting forth the steps for exhaustion, Defendants satisfy the first step of the analysis of Mr. Griffin's obligations. *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see Brown v. Phillips*, No. CV 16-2566, 2021 WL 780148, at *11 (E.D. Pa. Mar. 1, 2021) (prisoner at GWHCF failed to comply with prison's two-step grievance process because he failed to appeal his grievances).

Whether the appropriate remedies were "unavailable" to Mr. Griffin presents a factual issue that may be improper to resolve without first providing notice to the parties. The Third Circuit Court of Appeals directs a district court to notify the parties when the court plans to resolve factual disputes regarding exhaustion. *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018). Here, there appears to be a factual dispute as to whether Mr. Griffin did in fact receive a response to his first grievance. Mr. Griffin submitted a signed and dated grievance on September 17, 2019— roughly two weeks after the incident. Doc. No. 35, Ex. I. It was docketed as received the next day and a response was provided September 26, 2019—six business days after receipt. Mr. Griffin concedes that he did not file an appeal. But he maintains it was because he "received no response on any initial grievance." Am. Compl. at 7.

As with the plaintiff in *Paladino*, Mr. Griffin's rebuttal to the exhaustion argument may well depend on the "reliability of the prison's recordkeeping system." *Paladino*, 885 F.3d at 211. And, at present, there is no evidence in the record to establish whether Mr. Griffin in fact received the first grievance response, regardless of the fact that a prison official penciled in a response on the grievance form. To be sure, Mr. Griffin admits that he received a response the same day he filed his second grievance and that he did not appeal this response either. Am. Compl. at 7. Neither

party addresses the effect of a second grievance, which appears to repeat the allegations of a first filing, on the exhaustion issue.

Ultimately, however, because the Court finds that Mr. Griffin cannot show that Defendants used excessive force against him, the Court need not resolve the failure-to-exhaust issue. For this reason, it is not necessary to provide notice and an opportunity to submit materials relevant to the exhaustion issue.

## CONCLUSION

For the reasons set out in this memorandum, the Court grants Defendants' motion for summary judgment. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE